**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**McALLEN DIVISION**

| | | |
|---|---|---|
| AARON SOTO | § | |
| | § | |
| VS. | § | |
| | § | |
| THE CITY OF McALLEN, LUIS ZUNIGA, | § | CIVIL ACTION NO. |
| IN HIS INDIVIDUAL CAPACITIES AS | § | 7:18-cv-00151 |
| POLICE OFFICER AND AS AGENT OF | § | |
| THE CITY OF McALLEN AND | § | |
| ULYSSES BAUTISTA, IN HIS INDIVIDUAL | § | |
| CAPACITIES AS POLICE OFFICER AND | § | |
| AS AGENT OF THE CITY OF McALLEN | § | JURY REQUESTED |

---

**DEFENDANT OFFICER LUIS ZUNIGA'S THIRD**
**MOTION FOR JUDGMENT ON THE PLEADINGS**
**AND MOTION FOR SUMMARY JUDGMENT REGARDING**
**PLAINTIFF'S SECOND AMENDED ORIGINAL COMPLAINT**

---

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant **OFFICER LUIS ZUNIGA** moves for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12 and for Summary Judgment regarding Plaintiff's Second Amended Original Complaint, pursuant to Federal Rule of Civil Procedure 56, and in support thereof would respectfully show unto the Court the following:

## I.
## <u>SUMMARY OF MOTION</u>

1.01    Plaintiff's Second Amended Original Complaint alleges Fourth and Fourteenth Amendment claims as well as claims under the Civil Rights Act, 42 U.S.C. 1983 and 1988 of

excessive force and police misconduct against Officer Luis Zuniga arising out of his arrest of Plaintiff Aaron Soto.  Plntf's Second Amended Original Complaint, Document 70-2, ¶ IV, pp. 8-12.  He does not allege Officer Zuniga falsely arrested Plaintiff Aaron Soto, though he suggests that Plaintiff was arrested because of revenge and without probable cause and agrees that Plaintiff was transported to the police department on "suspicion" of DWI and Harassment of a Police Officer.  Plntf's Second Amended Original Complaint, Document 70-2, ¶ III, p. 4.  Aaron Soto has not identified or provided evidence to establish that his arrest or that his limited detention was unlawful, however, or established facts that Officer Zuniga's actions constituted a degree of force that was excessive to the need, necessary to establish violation of his clearly established constitutional rights.  Plaintiff cannot prove his causes of action against Officer Zuniga because the officer's conduct was not objectively unreasonable from the perspective of a reasonable officer at the scene.  Most important, Officer Zuniga is entitled to qualified immunity because his conduct was not objectively unreasonable in light of the clearly established law at the time of his alleged conduct.  Plaintiff's claims against Officer Zuniga should therefore be dismissed.

## II.
## FACTUAL BACKGROUND

2.01    Plaintiff alleges that on May 13, 2016, at approximately 1:00 a.m., while driving the wrong way down a one-way street, he was stopped by Officer Luis Zuniga of the McAllen Police Department.  Plntf's Second Amended Original Complaint, Document 70-2, ¶ III, pp. 3-4.

2.02   The documentary evidence shows Officer Zuniga first asked Plaintiff to perform a field sobriety test which Plaintiff failed.  Document 70-2, ¶ III, pp. 4, **Exhibit 1**, Zuniga's Inter-Departmental Communication, May 26, 2016.  During his arrest, Plaintiff was uncooperative ("escalation") and spit on the officer's face and eyes.   **Exhibit 5**, Scene of Accident; Document 70-2, ¶ III, p. 6, **Exhibit 1**, Officer Zuniga's Inter-Departmental Communication, May 26, 2016.  In the latest version of his complaint, Plaintiff makes false and unsubstantiated allegations about the occurrence while in the process of detaining Plaintiff, Document 70-2, ¶ III, pp. 4-7, but all agree Officer Zuniga then removed Plaintiff from the vehicle and temporarily kept him facing down on the sidewalk until he became cooperative, while waiting for a mask given to him by his supervisor to be placed on Plaintiff's head before ensuing to take Plaintiff to the police station for booking.  Document 70-2, ¶ III, p. 5-6, **Exhibit 1**, Officer Zuniga's Inter-Departmental Communication, May 26, 2016.

2.03   Plaintiff Soto's deposition is telling.  He has been arrested for DWI in 2010 or 2011.  **Exhibit 9**, Soto Depo. p. 18.  He completed defensive driving as part of the plea agreement for that DWI.   **Exhibit 9**, Soto Depo. p.100, and the records show that he completed the defensive driving about a year before the particular incident he complains about in this case.  **Exhibit 16**, **Plaintiff's DPS record**.  He has some anxiety issues and thinks the worst when a "cop" pulled him over.  **Exhibit 9**, Soto Depo. p.50.

2.04   Plaintiff could not conveniently remember the dialogue that he had with the officer after he turned the wrong way in a one-way street and ran over a curb.  **Exhibit 9**, Soto Depo. pp. 54-56.  He could not conveniently remember if he had been drinking.

**Exhibit 9**, Soto Depo. pp. 58-59; p.134.  He remembers failing the field sobriety test, and the breathalyzer test, but states that he was not driving under the influence.  **Exhibit 9**, Soto Depo. pp. 59-60.  Plaintiff remembers saying something about the officer's girlfriend and that the officer said something to him about his mother, and that things "kind of got heated." **Exhibit 9**, Soto Depo. pp. 62- 63.

2.05    Plaintiff denied that he had spit on the officer before being removed from the vehicle.  **Exhibit 9**, Soto Depo. pp. 66-67.  Plaintiff does not recall talking to the officer in the car and telling him that he knew there would be more severe consequences the second time that he would be stopped for DWI , **Exhibit 9,** Soto Depo. pp. 101-102, but the videotape speaks for itself.  **Exhibit 5**, Video of Scene.

2.06    Plaintiff does not remember speaking to people at the scene or that he was in a state that he was not very cognizant of everything around him, despite denying that he was drunk.  **Exhibit 9**, Soto Depo. pp.111-112.  Though he had a breathalyzer test showing that he was intoxicated above the legal limit at the scene, the hospital records taken hours after the scene showed that he had a blood serum alcohol of 147, **Exhibits 10 and 11**, Rio Grande Regional records and University Hospital records, respectively, and Plaintiff has no explanation as to how that occurred.  **Exhibit 9**, Soto Depo. pp. 120-121; 136.  He has no idea why he was placed under arrest for driving under the influence of alcohol.  **Exhibit 9**, Soto Depo. pp. 137– 138.

2.07    The Plaintiff does not remember who placed a spit mask on his head, and denied that 911 was called or that EMS arrived at the scene.  **Exhibit 9,** Soto Depo. pp. 67-68; pp.118-119.  He does not remember being told to calm down despite the video evidence

stating otherwise.  **Exhibit 9,** Soto Depo. p. 125; **Exhibit 5**, Video of Scene.  Plaintiff does not remember telling the hospital that he had a history of alcoholism despite the record saying otherwise.  **Exhibit 9,** Soto Depo. p. 128; **Exhibit 11**, University Health System.

2.08   Assuming that he spit on Officer Zuniga or that he was struggling and resisting officers, he would admit that it would be a provocation for the officer to react. **Exhibit 9**, Soto Depo. p. 139.  Plaintiff admits telling his parents that he was struggling while he was on the ground.  **Exhibit 9**, Soto Depo. p. 141.  He subsequently was sent to a specialist who said that he had a hairline fracture to his cheekbone which did not require surgery and he never followed up with his doctor.  **Exhibit 9,** Soto Depo. p. 73; p. 121; **Exhibit 11**, University Hospital records (very small fracture).  He does not remember the name of the dentist he apparently saw for alleged injury.  **Exhibit 9,** Soto Depo. p. 74.

2.09   The Plaintiff admitted that he had been in the hospital before because someone had broken his nose by hitting him with a crowbar while in high school which required him to go to the hospital in an ambulance and required him to have surgery six months later.  **Exhibit 9,** Soto Depo. pp. 121-124; **Exhibit 11**, University Hospital.  He did not think that that pain from a crowbar hit to his face was as much as the pain he suffered under the officers.  **Id**.

2.10   Ultimately Plaintiff admits that he took a plea bargain deal where he accepted the DWI and the prosecutors dropped an additional charge of harassment or attack on public servants.  **Exhibit 9,** Soto Depo. pp. 113-114.  He also admits that he apologized to Officer Zuniga at some point after the incident.  **Exhibit 9,** Soto Depo. p. 115; **Exhibit 5**, Video of Scene.

2.11    Officer Zuniga was hired by the McAllen Police Department in 2009. **Exhibit 10**, Zuniga Video Depo. Time 11:00.  [1]He was an investigator at the time of the incident and was working a DWI detail, something he had done for a long period of time. **Exhibit 10**, Zuniga Video Depo. Time 13:30–13:50.  Though he was taught about use of force, he was not told that he could not use force in DWI cases, **Exhibit 10**, Zuniga Video Depo. Time 17:21-19:30, or that he was taught about excessive use of force.  **Exhibit 10**, Zuniga Video Depo. Time 46:30.  Co-Defendant Officer Bautista does not recall excessive force training, or receiving any instructions when a suspect spits on an officer.  **Exhibit 13**, Bautista Video Depo. Time 12:30; 26:18.

2.12    Other than regarding this incident, Officer Zuniga has never been investigated for allegedly using excessive force.  **Exhibit 10**, Zuniga Video Depo. Time 19:32; 58:06.  After observing Plaintiff, noting that Plaintiff smelled of alcohol, was slurring his speech and was a little off balance, Officer Zuniga was suspicious Plaintiff was intoxicated.  **Exhibit 10**, Zuniga Video Depo. Time 26.5.  After giving Plaintiff a portable breathalyzer test and noting that he was three times the legal limit, he determined that Plaintiff was intoxicated to the degree that he was a danger to himself and others.  **Exhibit 10**, Zuniga Video Depo. Time 32:42-32:48.  The sobriety field test and the breathalyzer is a reasonable conclusion that Plaintiff was intoxicated.  **Exhibit 10**, Zuniga Video Depo. Time 1:19:21.

---

[1] Defendant Zuniga would have preferred to cite transcribed depositions of Defendants Zuniga, Bautista and Rodriguez (Representative for Defendant City), but the transcripts are not yet available as of this date.

2.13    While placing Plaintiff in the squad car, Plaintiff spit on Officer Zuniga. **Exhibit 10**, Zuniga Video Depo. Time 24:58.  (See also, Bautista's testimony that Soto struck Zuniga with spit.  **Exhibit 13**, Bautista Video Depo. Time 1:15:06.)   Zuniga had never dealt with being spit on during his time in investigations. **Exhibit 10**, Zuniga Video Depo. Time 35:15.  Because Zuniga could not put the seatbelt on Plaintiff without being spit on his face again, and fear of communicable diseases from Plaintiff, he determined the best thing and safest thing to do was to bring out Plaintiff in order to obtain control of him. **Exhibit 10**, Zuniga Video Depo. Time 36:00-37:00.  Zuniga put Plaintiff on the ground on the street close to the curb.  **Exhibit 10**, Zuniga Video Depo. Time 40:41; Time 1:21:49. He tried to do it in a safe manner given that Soto lunged at him.  **Exhibit 13**, Bautista Video Depo. Time 1:19:46.  He did not throw Plaintiff to the ground.  **Exhibit 13**, Bautista Video Depo. Time 42:07; Time 1:19:46.   Zuniga tried to control Plaintiff who was struggling with him and put his knee on Plaintiff's low back while continuing to tell Plaintiff to calm down and continuing to clean up the spit from his face.  **Exhibit 10**, Zuniga Video Depo. Time 1:20:32-1:21:01.   Officer Bautista agreed the Plaintiff was uncooperative and resisting, **Exhibit 13**, Bautista Video Depo. Time 36:00, and that Zuniga was merely trying to control Soto.  **Exhibit 13**, Bautista Video Depo. Time 57:32.  Officer Zuniga  noted that based on his experience, he knows that intoxicated people act more radically and are not predictable.  **Exhibit 10**, Zuniga Video Depo. Time 1:13:10.  Officer Bautista has seen people in handcuffs attack officers.  **Exhibit 13**, Bautista Video Depo. Time 1:04:01.

2.14    When Plaintiff finally calmed down and sat up, Zuniga noticed Plaintiff's cheek and called EMS.  **Exhibit 10**, Zuniga Video Depo. Time 40:59.  Zuniga is not sure

how it happened.  **Exhibit 10**, Zuniga Video Depo Time 40:56.  Plaintiff refused to go with EMS to the hospital.  **Exhibit 10**, Zuniga Video Depo. Time 50:53; **Exhibit 5**, Video of Scene.  Quite a few supervisors came to the scene.  **Exhibit 10**, Zuniga Video Depo. Time 35:43.  **Exhibit 13**, Bautista Video Depo. Time 50:04.   Supervisor Tamez brought the red man suit (face mask) which only the supervisors keep, and Zuniga believes that Tamez put it on Plaintiff and that Zuniga assisted him.  **Exhibit 10**, Zuniga Video Depo. Time 42:18-42:30.

2.15    Zuniga disagrees that he threw Plaintiff on the floor and that he put a knee on top of Plaintiff's head.  **Exhibit 10**, Zuniga Video Depo. Time 47:00.  Zuniga was not suspended after the incident, and though he resigned for other reasons, his F-5 identifies that he separated the McAllen Police Department with an honorable discharge.  **Exhibit 10**, Zuniga Video Depo. Time 48.33; **Exhibit 15**, Rodriguez Video Depo. Media 3 Time 40:53-57:49.

2.16    Zuniga believes that his conduct conformed to the department's policies and that he acted based on his experience and training and especially because he was a victim, and vantage point that the force he used was reasonable. **Exhibit 10**, Zuniga Video Depo. Time 51:50-52:56.   He also believes that, with regard to the office of professional responsibility, investigation, a review of the matter was not made by them under the circumstances that he was in at the time of the incident, and that they were generally "Monday morning quarterbacking." **Exhibit 10**, Zuniga Video Depo. Time 1:06:50.  He is not aware of any other case like this.  **Exhibit 10**, Zuniga Video Depo. Time 53:20.  He believes that he acted according to his training and that several other supervising officers

agreed that his actions were objectively reasonable based on the circumstances.  **Exhibit 10**, Zuniga Video Depo. Time 1:07:57.  **Exhibit 13**, Bautista Video Depo. Time 1:13:06. Officer Bautista, a Co-Defendant, agrees that officers were never given instructions when a suspect spits on them, or regarding spitting overall, or what do when a suspect is handcuffed and spits.  **Exhibit 13**, Bautista Video Depo. Time 26:35-26:54; Time 58:27. He has also seen people attacking police officers while they were handcuffed.  **Exhibit 13**, Bautista Video Depo. Time 1:04:02.  Officer Bautista believed that Officer Zuniga used the degree of force necessary to control Soto under the circumstances.  **Exhibit 13**, Bautista Video Depo. Time 1:51:36.  They were trained that communicable diseases are spread by spitting, and that they should protect themselves against it.  **Exhibit 13**, Bautista Video Depo. Time 1:55:03.

2.17    The Chief of Police, Victor Rodriguez, agreed that every "misconduct" case has a unique set of facts.  **Exhibit 15**, Rodriguez Video Depo. Media 3 Time 1:45; Time 3:45.  Fifth Circuit standards have to do with excessive force cases, but his review (through the Internal Affairs office [IA]/the Office of Professional Responsibility [OPR]) has to do for misconduct.  **Exhibit 15**, Rodriguez Video Depo. Media 3 Time 9:50.  He knows of no similar cases like this one, and doubts there are any cases with the exact same facts as in this case.  **Exhibit 15**, Rodriguez Video Depo. Media 3 Time 12:03; Time 14:04.  He understands that the officer's conduct should be determined based on the circumstances and the facts known to them at the time, and that every case is different.  **Exhibit 15**, Rodriguez Video Depo. Media 3 Time 25:30; Time 26:27.   His review of the case occurs after the incident has occurred.  **Exhibit 15**, Rodriguez Video Depo. Media 3 Time 17:02.

He acknowledged that a supervisor/Lieutenant, Esmeralda Guerra, was there when the supervisors brought the red man suit to the scene.  **Exhibit 15**, Rodriguez Video Depo. Media 3 Time 21:22.  He recalled that Guerra stated that they called EMS.  **Exhibit 15**, Rodriguez Video Depo. Media 3 Time 27:35-27:55.  He also acknowledged that his review of the video showed that Plaintiff spit on Zuniga and that all of his police officers that reviewed the video said the same.  **Exhibit 15**, Rodriguez Video Depo. Media 3 Time 29:10-29:20.  He remembered that an intake sergeant, Castaneda, stated that Soto was angry that Zuniga arrested him for DWI.  **Exhibit 15**, Rodriguez Video Depo. Media 3 Time 30:57.  He noted that Capt. Friedman reviewed the video and believed that Zuniga used the necessary force to control Plaintiff; and, that Zuniga could not have put a seatbelt on Plaintiff as required by state law while Plaintiff was spitting, without taking Soto out and putting on the Red man suit (spit mask) outside of the car.  **Exhibit 15**, Rodriguez Video Depo. Media 3 Time 29:54-32:30; Time 33:10.  Zuniga was obligated by state law to seat belt Soto.  **Exhibit 15**, Rodriguez Video Depo. Media 3 Time 32:57.  He also remembers that Lieutenant Foley, the Internal Affairs Director, after reviewing the evidence, reported that Zuniga takes action to end the attack, **Exhibit 15**, Rodriguez Video Depo. Media 3 Time 34:15, and that Soto was injured as a result of an action brought upon by himself.  **Exhibit 15**, Rodriguez Video Depo. Media 3 Time 34:40.  He raised no reason to believe the supervisor's reports are false or mispresent facts.  He agrees that Capt. Friedman reported that Zuniga followed the use of force policy of the City of McAllen. **Exhibit 15**, Rodriguez Video Depo. Media 3 Time 36:00-37:20.  His letter of July 5, 20216 is a contemplated disciplinary action to Officer Zuniga, which only states that <u>if</u> the facts

alleged are true they would warrant disciplinary action; and, it does not state that those facts are true.  **Exhibit 15**, Rodriguez Video Depo. Medial 3 Time 35:00-36:58.  He also admitted that they do not train their officers about spitting, though he considers spitting to be an assault.  **Exhibit 15**, Rodriguez Video Depo. Media 3 Time 42:36; Time 43:375; Time 46:00.

2.18   During the police department's Office of Professional Responsibility investigation, Officer Zuniga's narrative explained that he attempted to detain Mr. Soto in the rear seat of the vehicle, but because of Plaintiff's spitting on his face he felt that, for his protection and that of others, that he should restrain Mr. Soto on the street facing away from him until a helmet ("red man suit") arrived which would contain Mr. Soto's spitting mask. **Exhibit 1**, Officer Zuniga's Inter-Departmental Communication, May 26, 2016, **Exhibit 17**, Affidavit of Officer Zuniga, and **Exhibit 3**, Officer Zuniga's Inter-Departmental Communication, July 1, 2016.   **Exhibit 4**, Captain Freeman's Inter-Departmental Communication, May 31, 2016.

2.19   When internal affairs reviewed the incident and films, Captain John Freeman concluded that he saw no misconduct by Officer Zuniga.  Specifically, his report stated that he "concluded that Zuniga used the amount of force necessary to restrain Mr. Soto in order to apply the spit shield and seatbelt.  Zuniga would not have been able to apply the spit shield and Red Man Helmet to Soto, while he was seated in the unit without the risk of being spat on again, and would not be able to seatbelt Soto without the spit shield in place." **Exhibit 4**, Captain Freeman's Inter-Departmental Communication, May 31, 2016.

2.20    Similarly, Officer Zuniga's expert John J. Ryan confirms that a force response that prevents or diminishes the possibility of a further assault with bodily fluids was consistent with generally accepted policies, practices, training and legal mandates trained to officers for application in field operations.  **Exhibit 6** ⸿ 63.  He further noted that there is no question that Zuniga had established command presence and had already given Soto verbal commands, and that it was clear that Soto established the event and that Zuniga's force was in response to this correlation.  **Exhibit 6** ⸿ 65.  Taking Soto from a police vehicle and placing him on the ground pending arrival of the Red Man Headgear and spit mask was consistent with generally accepted policies, practices, training and legal mandates trained to officers for application in field operations; and, closing the door fails to address that the door needs to be re-opened thus giving the suspect the opportunity for continued assault **Exhibit 6** ⸿ 66.  An officer like Zuniga, faced with his type of escalation would conclude that use of a takedown from the vehicle to the sidewalk was consistent with generally accepted policies, practices, training and legal mandates trained to officers for application in field operations.  **Exhibit 6** ⸿ 67.  The decision to use the Red Man headgear was consistent with best practices.  **Exhibit 6** ⸿ 68.

2.21    There is no evidence that the officer caused his injuries or if the Plaintiff caused his own injuries trying to fight with the officer who was trying to calm Plaintiff and attempting to deescalate the situation while trying to prevent Plaintiff from spitting on him again.

### III.
### <u>LEGAL ANALYSIS</u>

3.01    Aaron Soto alleges Officer Zuniga's actions of wrongful arrest and/or use of excessive force, were in violation of the Fourth Amendment.  Simply alleging a deprivation

of federal rights will not permit an inference of culpability or causation, however, and Mr. Soto has not identified or established any facts that would establish Officer Zuniga did not have the authority to arrest him or that he used excessive force in violation of clearly established constitutional rights.   Further, Plaintiff Soto has not alleged he was wrongfully arrested.   In the alternative, Officer Zuniga is entitled to qualified immunity because his conduct was not objectively unreasonable in light of clearly established law.

To the extent that Plaintiff is suing Defendant Zuniga in his official capacity, such suit should be treated as a suit against the entity, the City of McAllen, and not as a suit against the official person personally.   ***Kentucky v. Graham***, 473 U.S. 159, 105 S. Ct. 3099 (1985).   Thus, to the extent that Defendant Zuniga in his official capacity is mentioned in Plaintiff's First Amended Original Complaint, relief given to the City of McAllen should likewise be given to Defendant Zuniga.   As such with respect to the Plaintiff's official capacity claims, Defendant Zuniga relies on the City of McAllen's First Amended Motion for Judgment on the Pleadings and Motion to Dismiss for Lack of Jurisdiction, Document 47.

## A.   <u>Standard for Judgment on the Pleadings</u>

3.02   After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings.   While a motion to dismiss under Rule 12(b)(6) applies to claims on which recovery may not be had based on the allegations in the pleadings, Rule 12(c) applies to a complaint that would otherwise be a good claim but on which an "impenetrable defense" may apply.   ***Richards v. Mitcheff***, 696 F.3d 635, 637 (7th Cir. 2012).

3.03    A 12(c) motion may also be filed as the equivalent of a 12(b)(6) motion after an answer has been filed or the pleadings have otherwise been closed.  A motion under Rule 12(c) is virtually identical to a motion under Rule 12(b)(6), save for the timing of the motion, since both rules allow challenge to the sufficiency of the complaint.  Once a defendant has filed an answer, he may no longer pursue a 12(b)(6) motion since the pleadings are then closed and may be reopened only with leave of the court under Rule 15. "[A] Rule 12(b) motion must be filed before responsive pleadings…. Rule 12(c) motions … may be filed after the pleadings are closed." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999).  Therefore, if an answer is filed in state court prior to removal to federal court, the proper vehicle for dismissal would be under Rule 12(c).  *Young v. City of Hous.*, 599 F. App'x 553, 554 (5th Cir. 2015).  "Such motions will be treated as a motion for judgment on the pleadings based on a failure to state a claim on which relief may be granted." *Jones v. Greninger*, 188 F.3d at 324.

3.04    Because the two rules serve the same purpose, they are applied in the same manner.  "A motion for judgment on the pleadings under FRCP 12(c) is subject to the same standard as a motion to dismiss under FRCP 12(b)(6)." *Ackerson v. Bean Dredging LLC*, 589 F3d 196, 209 (5th Cir. 2009), *quoting* *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).  "Thus, the 'inquiry focuses on the allegations in the pleadings' and not on whether the 'plaintiff actually has sufficient evidence to succeed on the merits,'" since discovery will not assist the Plaintiff in defending a Rule 12(c) motion. *Ackerson v. Bean Dredging LLC*, 589 F3d at 209, *quoting* *Ferrer v. Chevron Corp.*, 484 F.3d 776, 782 (5th Cir. 2007).

3.05    "To survive a [Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).  The Court need not accept at face value any factually unsupported legal conclusions, however.  *Fernandez-Montez v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir. 1993) ("conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss").  See also *Vulcan Materials Co. v. City of Tehuacana,* 238 F.3d 382, 387 (5th Cir. 2001).  The Court is not required to accept ultimate conclusions that do not flow from the factual description of the case. **Id.**, 238 F.3d at 388, citing *5A C. Wright & A. Miller*, FED. PRAC. & PROC.: CIVIL 2d §1357, at 319-20 (1990).  See also *Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1067 (5th Cir. 1994) ("In order to avoid dismissal for failure to state a claim ... a plaintiff must plead specific facts, not mere conclusory allegations.  We will thus not accept as true conclusory allegations or unwarranted deductions of fact."); *Burgos v. Group & Pension Adm'rs, Inc.,* 286 F. Supp. 2d 812, 814-15 (S.D. Tex. 2003).

3.06    "Factual allegations must be enough to raise a right to relief above the speculative level.… [and not simply] create[] a suspicion [of] a legally cognizable right of action, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 127 S.Ct. at 1965.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679, 129 S.Ct. at 1949.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." **Id**. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" **Id.**, quoting *Twombly*, 127 S.Ct. at 1955.

3.07    The plausibility standard concerns the factual allegations of a complaint. "[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery ... or contain allegations from which an inference fairly may be drawn under the relevant legal theory." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995, quoting *3 C. Wright & A. Miller*, FED. PRAC. & PROC.: CIVIL 2d § 1216, at 156-59). Thus, dismissal is proper if the complaint "lacks an allegation regarding a required element necessary to obtain relief." **Id**., quoting 2A MOORE'S FEDERAL PRACTICE ¶ 1207, at 12-91.

**B.**    **Standard for Summary Judgment**

3.08    "Summary judgment serves as the ultimate screen to weed out truly insubstantial lawsuits prior to trial." *Crawford-El v. Britton*, 523 U.S. 574, 600, 118 S. Ct. 1584, 140 L. Ed. 2d 759. Summary judgment is appropriate when the case calls for judgment as a matter of law. In other words, the Court must be able to make a legal ruling without the need to resolve factual disputes. *Saldivar v. City of Alton*, 2013 U.S. Dist. LEXIS 138202, p. 2 (S.D. Tex. 2013). Summary Judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 261 (5th Cir. 1999).

3.09   "A court considering a motion for summary judgment must consider all facts and evidence in the light most favorable to the nonmoving party.  Moreover, a court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence.  *Saldivar v. City of Alton*, 2013 U.S. Dist. LEXIS 138202, p. 2.  In addition, a court 'must disregard all evidence favorable to the moving party that the jury is not required to believe.'"  *Haverda v. Hays Cnty.*, 723 F.3d 586, 591 (5th Cir. 2013) (citations omitted).

3.10   "A moving party need not negate the nonmoving party's evidence, but may support its motion by pointing out the nonmoving party's lack of evidence, showing the immateriality of the nonmoving party's evidence, or by itself demonstrating that no genuine dispute exists.  *Saldivar v. City of Alton*, 2013 U.S. Dist. LEXIS 138202, p. 2.  The movant must "demonstrate the absence of a genuine issue of material fact."  *Indest v. Freeman Decorating, Inc.*, 164 F.3d at 261, *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).  If the movant meets its burden, the non-movant must then go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial*.  Indest v. Freeman Decorating, Inc.*, 164 F.3d at 261.  After the moving party meets its burden, "the nonmoving party may not rest on mere allegations, but must set forth specific facts indicating a genuine issue for trial."  *Elizondo v. Parks*, 431 F. App'x 299, 302 (5th Cir. 2011).

3.11   "Parties may cite to any part of the record, or bring evidence in the motion and response."  *Saldivar v. City of Alton*, 2013 U.S. Dist. LEXIS 138202, p. 3, *citing* FED. R. OF CIV. P. 56(c).  By either method, parties need not proffer evidence in a form

admissible at trial, but must proffer evidence substantively admissible at trial. *See **Celotex Corp. v. Catrett***, 477 U.S. at 324 ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment."); ***Bellard v. Gautreaux***, 675 F.3d 454, 460 (5th Cir. 2012) ("the evidence proffered by the plaintiff to satisfy his burden of proof must be competent and admissible at trial.").

3.12    The non-movant's burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. ***Willis v. Roche Biomedical Laboratories, Inc***., 61 F.3d 313, 315 (5th Cir. 1995). "'Unsubstantiated assertions, improbable inferences, and unsupported speculation,' ... 'are not sufficient to defeat a motion for summary judgment.'" ***Daigre v. City of Waveland***, 549 F. App'x 283, 285 (5th Cir. 2013), *quoting **Brown v. City of Houston***, 337 F.3d 539, 541 (5th Cir. 2003). "A plaintiff's mere beliefs, conclusory allegations, speculation, or unsubstantiated assertions [...] as a result of illegal [action] are insufficient to survive summary judgment. ***King v. W. W. Grainger, Inc.***, 2012 U.S. Dist. LEXIS 31517, 2012 WL 777319, p. 12 (N.D. Miss. 2012), *citing **Douglass v. United Services Auto. Ass'n***, 79 F.3d 1415, 1430 (5th Cir. 1996). *See also **Hornsby v. Conoco, Inc.,*** 777 F.2d 243, 246 (5th Cir. 1985).

3.13    Furthermore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion; the requirement is that there be no *genuine* issue of *material* fact. ***Anderson v. Liberty Lobby, Inc***., 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2508 (1986)*.*  An issue is "material" if it involves a fact that might affect the outcome of the suit under the governing law.  ***Merritt-Campbell, Inc., v. RxP***

***Products, Inc***., 164 F.3d 957, 961 (5th Cir. 1999).  Factual disputes that are irrelevant or

unnecessary are not counted.  ***Anderson v. Liberty Lobby, Inc***., 477 U.S. at 247-8, 106 S.

Ct. at 2508.

> We test … motions for summary judgment for sufficiency of the evidence under the *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir. 1969) (*en banc*), standard. Under *Boeing*, "there must be a conflict in substantial evidence to create a jury question." Substantial evidence is defined as "evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." Consequently, "[a] mere scintilla of evidence is insufficient to present a question for the jury."

***Rhodes v. Guiberson Oil Tools***, 75 F.3d 989, 993 (5th Cir. 1996) (internal citations

omitted), *aff'd in part & vacated in part on other grounds*, 82 F.3d 615 (5th Cir. 1996).

## C. <u>Officer Zuniga Did Not Wrongfully Arrest Plaintiff</u>

3.14   The Plaintiff has attempted to circumvent dispository motions by filing

various versions of complaints.  He seems now to admit that he is "not alleging or seeking

liability for any constitutional Fourth Amendment claim of false arrest."  Dkt. 51, p. 2.

Nevertheless, in abundance of precaution Defendant provides the following analysis.

3.15   After observing Plaintiff's vehicle driving on the wrong side of street, Officer

Zuniga activated his overhead red and blue lights and stopped Plaintiff on the wrong side

of the street.  **Exhibit 1**, Zuniga's Inter-Departmental Communication, May 26, 2016.

Once he approached Plaintiff on the driver side window, he could smell the strong order

of alcohol and notice slurred speech. Plaintiff admitted drinking "three 24's," meaning

three 24 ounce beers.  **Id**.  Officer Zuniga asked Plaintiff to begin performance tests, but

after Plaintiff was not able to do so, Plaintiff requested a field sobriety breathalyzer test

and Officer Zuniga complied.  **Id**.  The results were .207 B.A.C. **Id**.  In the process of

arresting Plaintiff, Plaintiff began to use vulgar language and made it difficult for the officer to perform a search.  **Id**.  Eventually Plaintiff was placed in the left passenger side of the unit. **Id**.

3.16   However, while reaching for the unit's seatbelt to secure Plaintiff's transportation, Plaintiff lunged at Officer Zuniga using his feet and spit on him, causing the officer to close his eyes (and lose control momentarily).  **Id**., see also **Exhibit 5**, Scene of Video, **Exhibit 13**, Bautista's Video Depo. Time 1:19:46-1:20:30.   Officer Zuniga then attempted to place Plaintiff on the ground face down safely in fear that he would spit again causing possible communicable diseases to Zuniga or that he would hurt himself, while calming Plaintiff down and waiting for a sergeant to bring a spit guard to place on Plaintiff before transportation despite Plaintiff resisting and wiggling.  **Exhibit 1**, Officer Zuniga's Inter-Departmental Communication, May 26, 2016, **Exhibit 3**, Officer Zuniga's Inter-Departmental Communication, July 1, 2016.  See also, **Exhibit 13**, Bautista Video Depo. Time 36.00; Time 57.15; Time 42.27, **Exhibit 10**, Zuniga Video Depo. Time 1:20.00-1:22.55; 40.40.

3.17   When Plaintiff calmed down, he was allowed to sit up until the supervisor arrived with the mask.  Zuniga Video Depo. Time 41:00.  While waiting for the supervisor to arrive, Officer Zuniga noted a small laceration to Plaintiff's left side and called for an ambulance, but Plaintiff refused medical attention.   **Exhibit 1**, Officer Zuniga's Inter-Departmental Communication, May 26, 2016; **Exhibit 10**, Zuniga Video Depo. Time 41.00.  After placing the mask (Red Man's suit) on Plaintiff, Mr. Soto was transported to the McAllen Police Department for processing by other officers. **Id**. and **Exhibit 3**, Officer

Zuniga's Inter-Departmental Communication, July 1, 2016.  The Plaintiff even apologized

to Officer Zuniga while being transported to jail.  **Exhibit 2**, Esmeralda Guerra's Inter-

Departmental Communication, May 13, 2016.

3.18    According to McAllen Police Department Policy, Section 50, IV, D:

D.      Parameters for use of non-deadly force.

1.    Where deadly force is not authorized, officers should assess the incident in order to determine which non-deadly technique or weapon will best de-escalate the incident and bring it under control in a safe manner.

2.    Police officers are authorized to use Department approved non-deadly force techniques and issued equipment for resolution of incidents, as follows:

a.    To protect themselves or another from physical harm; or

b.    To restrain or subdue a resistant individual; or

c.    To bring an unlawful situation safety and effectively under control.  **Exhibit 7**.

3.19    Plaintiff Aaron Soto's actions established the offense of Driving While

Intoxicated, for which he could be arrested.  The Texas Penal Code 49.04 provides that:

(a)    A person commits an offense if the person is intoxicated while operating a motor vehicle in a public place.

(b)    Except as provided by Subsections (c) and (d) and Section 49.09, an offense under this section is a Class B misdemeanor, with a minimum term of confinement of 72 hours.

(c)    If it is shown on the trial of an offense under this section that at the time of the offense the person operating the motor vehicle had an open container of alcohol in the person's immediate possession the offense is a Class B misdemeanor, with a minimum term of confinement of six days.

(d)     If it is shown on the trial of an offense under this section that an
        analysis of a specimen of the person's blood, breath, or urine showed
        an alcohol concentration level of 0.15 or more at the time the analysis
        was performed, the offense is a Class A misdemeanor.

Soto was driving while intoxicated as he had a blood alcohol concentration level of .207.

Plaintiff has no idea how he failed the field sobriety test and breathalyzer test, **Exhibit 9**,

Soto Depo. pp. 59-60, or why his blood alcohol level was 147 after hours of his arrest.

**Exhibit 9**, Soto Depo. pp. 12-121; p. 136.  **Exhibits 11 and 12**, Rio Grande Regional

Hospital and University Hospital records, respectively.

3.20    Plaintiff also violated Texas Penal Code 22.11 (a) (3) for Harassment of a

Public servant as follows:

(a)     A person commits an offense if, with the intent to assault, harass, or alarm,
        the person:

        (3)     Causes another person the actor knows to be a public servant to
                contact the blood, seminal fluid, vaginal fluid, saliva, urine, or
                feces of the actor, any other person, or an animal while the public
                servant is lawfully discharging an official duty or in retaliation
                or on account of an exercise of the public servant's official power
                or performance of an official duty.

Though that charge was dropped due to a plea deal, Plaintiff does not deny he was

charged for that crime.  **Exhibit 9**, Soto Depo. pp. 113-114.

3.21    The video shows that he intended to assault Officer Zuniga by spitting on him

and pushing himself with his feet against the officer, and Plaintiff would not have apologized

had he realized his actions were improper.  Both of the charges, **Exhibit 7**, Offense Report

and **Exhibit 8**, Register of Actions, are no long pending. The video does not show facts

alleged in Plaintiff's newly filed First Amended Original Complaint or the allegations made in his deposition, however.

3.22    Mr. Soto could have also been charged with attempting to evade arrest or detention.  "[R]esisting arrest [is] defined as intentionally preventing a peace officer from effecting a *lawful* arrest."  ***Heck v. Humphrey***, 512 U.S. 477, 486 n.6, 114 S. Ct. 2364, 2372 (1994) (emphasis in original).  *See also* Tex. Penal Code § 38.03(a) ("A person commits an offense if he intentionally prevents or obstructs a person he knows is a peace officer … from effecting an arrest … of the actor … by using force against the peace officer …").  In the event Plaintiff claims otherwise, "[i]t is no defense to prosecution [for evading arrest or detention] … that the arrest … was unlawful."  Tex. Penal Code § 38.03(b).

3.23    To the extent he intentionally attempted to prevent Officer Zuniga from arresting him, Plaintiff met the elements of *resisting arrest*, for which he could be arrested independent of any disorderly conduct charges.  *See* ***Castillo v. City of Corpus Christi***, No. C-11-93, 2012 U.S. Dist. LEXIS 52800 at *18 n.3 (S.D. Tex. April 16, 2012).  *See also,* ***United States v. Harrimon***, 568 F.3d 531, 533 (5th Cir. 2009).

3.24    Even if the officer did not intend to fully arrest Mr. Soto before this arrest, suspects may be temporarily detained because of concerns for safety, which does not constitute an actual arrest.  Detaining a suspect because of safety concerns is a "legitimate exercise of valid routine police procedure."  ***United States v. Bradshaw***, 102 F.3d 204, 212 (6th Cir. 1996).  An officer is "entitled to temporarily detain [a suspect] to preserve the status quo for safety reasons until the intentions of the [suspect] could be sorted out." ***Naill***

*v. Benavides*, 268 Fed. Appx. 355, 357 (5th Cir. 2008). Certainly driving onto opposite one way traffic would be a legitimate safety concern to any patrol officer.

3.25    To establish a "constitutional claim of false arrest requires a showing of no probable cause." ***Club Retro LLC v. Hilton***, 568 F.3d 181, 204 (5th Cir. 2009). "The right to be free from arrest without probable cause is a clearly established constitutional right." ***Mangieri v. Clifton***, 29 F.3d 1012, 1016 (5th Cir. 1994). "Probable cause is present 'when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.'" ***Goodson v. City of Corpus Christi***, 202 F.3d 730, 740 (5th Cir. 2000), *quoting **Vance v. Nunnery***, 137 F.3d 270, 276 (5th Cir. 1998). *See also United States v. Levine*, 80 F.3d 129, 132 (5th Cir. 1996). "Probable cause to arrest exists 'where the facts and circumstances within (the officer's) knowledge and of which [he] had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." ***United States v. Preston***, 608 F.2d 626, 632 (5th Cir. 1979), *quoting **Draper v. United States***, 358 U.S. 307, 313, 79 S. Ct. 329, 3 L. Ed. 2d 327 (1964). *See also **Resendiz v. Miller***, 203 F.3d 902, 903 (5th Cir. 2000).

3.26    A police officer also has probable cause if there is a "'fair probability' that the individual [to be arrested] has either committed or intends to commit a crime." ***Northrop v. Trippett***, 265 F.3d 372, 379 (6th Cir. 2001), *quoting **United States v. Sokolow***, 490 U.S. 1, 7, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989). "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such

activity." *Illinois v. Gates*, 462 U.S. 213, 243 n.13, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). "If there was probable cause for any of the charges made … then the arrest was supported by probable cause, and the claim for false arrest fails." *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir.1995). Because the elements for DWI and Harassment of a Public Servant were met, at the very least Defendant Officer Zuniga had sufficient probable cause to arrest Aaron Soto. *See Foster v. State*, No. 05-94-00713-CR, 1995 Tex. App. LEXIS 3570 (App. — Dallas Aug. 30, 1995, no pet.).

3.27    An officer is not required to reach exactitude in determining whether a violation has occurred. "[A]n arrest is not unconstitutional merely because the information relied upon by the officer later turns out to be wrong." *Sauls v. Welch*, 2007 U.S. Dist. LEXIS 53711, p. 7 (N.D. Tex. July 24, 2007); *BeVier v. Hucal*, 806 F.2d 123, 126 (5th Cir. 1986). "Evidence required to establish guilt is not necessary." *Henry v. United States*, 361 U.S. 98, 102, 80 S. Ct. 168, 4 L. Ed. 2d 134 (1959). *See also McKinney v. George*, 726 F.2d 1183, 1187 (7th Cir.1983). The Constitution does not guarantee that only the guilty will be arrested. *Baker v. McCollan*, 443 U.S. 137, 145, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979).

3.28    Because Officer Zuniga had sufficient probable cause to arrest Aaron Soto for DWI and subsequently for harassment of a public servant and possibly resisting arrest and evading arrest, he has not identified any facts that would establish a Fourth Amendment claim for wrongful or false arrest. Each of Plaintiff's claims of wrongful or false arrest, to the extent it is plead, should therefore be dismissed.

**D.**   **Officer Zuniga Did Not Use Excessive Force in Arresting Plaintiff**

3.29   Plaintiff complains that while controlling him, Officer Zuniga pulled him from his seat and body slammed him head first onto the sidewalk, resulting in a fracture of his facial bones, and causing him to suffer injuries.  See Dkt. No. 70-2, Plaintiff's Second Amended Original Complaint ¶ III, p. 4.  During his deposition, however, he did not remember events about the incident which would show he does not really remember the altercation itself; rather, that he is using his selective memory after the events in order to attempt to establish a case which he would not otherwise be able to do.  Defendant Zuniga requests this Court to refer to the factual background of the motion herein citing Plaintiff's deposition testimony.  Although Defendant does not agree with Plaintiff's newly invented allegations Dkt. No. 70-2, p. 35, Defendant Zuniga does not deny eventually exercising control over Plaintiff until a spit guard arrived to transport Plaintiff.  See **Exhibit 1**, Officer Zuniga's Inter-Departmental Communication, May 26, 2016; **Exhibit 3**, Officer Zuniga's Inter-Departmental Communication, July 1, 2016; **Exhibit 5**, Scene of Accident.  The facts alleged by Plaintiff concerning excessive force are in dispute, however, and establishing an injury is not enough for Plaintiff to prevail because he brought his injury to himself according to a lieutenant in the department. **Exhibit 4**, Captain Freeman's Inter-Departmental Communication, May 31, 2016; **Exhibit 15**, Rodriguez Video Depo. Media 3 Time 34.40 (regarding Lieutenant Foley's IAD's report).

3.30   In the Fifth Circuit "[i]t is clearly established law . . . that in order to state a claim for excessive force in violation of the Constitution, a plaintiff must allege (1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive

to the need; and the excessiveness of which was (3) objectively unreasonable." ***United States v. Brugman***, 364 F.3d 613, 616 (5th Cir. 2004), *citing* ***Bazan v. Hidalgo County***, 246 F.3d 481, 487 (5th Cir. 2001).  "Determining whether the force used to effect the particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interest at stake." ***Graham v. Connor***, 490 U.S. 386, 396, 109 S. Ct. 1865, 1871, 104 L. Ed. 2d 443 (1989).  *See also,* ***Tennessee v. Garner***, 471 U.S. 1, 8, 105 S. Ct. 1694, 1699, 85 L.Ed.2d 1 (1985); ***United States v. Place***, 462 U.S. 696, 703, 103 S. Ct. 2637, 2642, 77 L.Ed.2d 110 (1983).  Because:

> "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application,"... its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

***Connor***, 490 U.S. at 396, 109 S. Ct. at 1872, *quoting* ***Bell v. Wolfish***, 441 U.S. 520, 559, 99 S. Ct. 1861, 1884, 16 L.Ed.2d 447 (1979).  *See also* ***Garner***, 471 U.S. at 839, 105 S. Ct. at 1699-1700 (the question is "whether the totality of the circumstances justifie[s] a particular sort of ... seizure").

3.31   Whether a particular use of force is reasonable "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." ***Connor***, 490 U.S. at 396, 109 S. Ct. at 1872.  *See also* ***Terry v. Ohio***, 392 U.S. 1, 19 n.16, 88 S. Ct. 1868, 1879 n.16, 20 L.Ed.2d 889 (1968).  "As in other Fourth Amendment contexts, … the 'reasonableness' inquiry in an excessive force case is an

objective one: the question is whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Connor*, 490 U.S. at 397, 109 S. Ct. at 1872.  S*ee also Scott v. United States*, 436 U.S. 128, 137-39, 98 S. Ct. 1717, 1723-24, 56 L.Ed.2d 168 (1978).

3.32   In order to establish the liability of an individual under § 1983, however, Plaintiff must also establish a subjective element, *i.e.*, that the actions of Officer Zuniga were taken with "deliberate indifference" to his clearly established constitutional rights. *See Farmer v. Brennan*, 511 U.S. 825, 840, 114 S. Ct. 1970, 1980, 128 L. Ed. 2d 811 (1994); *City of Canton v. Harris*, 489 U.S. 378, 388-89, 109 S. Ct. 1197, 1204-05, 103 L. Ed. 2d 412 (1989).  "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence to his action." *Board of County Commissioners of Bryant County v. Brown*, 520 U.S. 397, 410, 117 S. Ct. 1382, 1390, 137 L. Ed. 2d 626 (1997).

3.33   The Fifth Circuit equated the deliberate indifference standard to a criminal law *mens rea* recklessness standard where a person disregards a risk of harm of which he is aware.  *Hare v. City of Corinth*, 74 F.3d 633, 648 (5th Cir. 1996) (*en banc*).  Neither negligence nor gross negligence is sufficient to prove that an official acted or failed to act with deliberate indifference; the standard is higher.  *Brown*, 520 U.S. at 407, 117 S. Ct. at 1390; *Hare*, 74 F.3d at 648-49.  *See City of Monterey v. Del Monte Dunes, Ltd.*, 526 U.S. 687, 728, 119 S. Ct. 1625, 1647, 143 L. Ed. 2d 882 (1999) (Scalia, J., concurring) (noting, and citing to, numerous occasions where Supreme Court has referred to actions under § 1983 and predecessor statute as constitutional torts).  *See also Atteberry v. Nocona General*

*Hosp.*, 430 F.3d 245, 254 (5th Cir. 2005) (mere negligence not standard); ***Thompson v. Upshur County***, 245 F.3d 447, 459 (5th Cir. 2001) (standard is higher than gross negligence).   The Fifth Circuit has noted that the standard for deliberate indifference is high, holding that "[a]ctions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity." ***Alton v. Texas A&M Univ.***, 168 F.3d 196, 201 (5th Cir.1999). *See also **Southard v. Texas Bd. Of Criminal Justice***, 114 F.3d at 551.

3.34   As discussed above, the facts show that Officer Zuniga saw Plaintiff driving on the wrong way on a one-way street, and after testing for DWI was confronted with Mr. Soto's resisting Officer Zuniga's attempts to detain him.   **Exhibit 1**, Zuniga's Inter-Departmental Communication, May 26, 2016.   Plaintiff admitted during his deposition that he was driving the wrong way on a one-way street and even jumped the curb making a turn.   **Exhibit 9**, Soto Video Depo. Time 53.00 – 55.00.   Plaintiff conveniently does not remember the dialogue leading to the confrontation and the details of the events.   The facts do not establish Officer Zuniga's actions were objectively unreasonable or deliberately indifferent to his known constitutional rights.   Particularly where Officer Zuniga was attempting to control Plaintiff and protect both himself and Mr. Soto, Officer Zuniga's use of force was necessary and reasonable and based on his training and experience.   **Exhibit 10**, Zuniga Video Depo. Time 51:50-52:56; Time 1.08.10; **Exhibit 13**, Bautista Video Depo. Time 57:30.   The use of non-deadly force by Officer Zuniga was the least offensive means of accomplishing his goal of controlling Plaintiff for his own safety and the safety of others that he was aware of at the time, and such was confirmed by his supervisor.

**Exhibit 4**, Captain Freeman's Inter-Departmental Communication, May 31, 2016.  **Exhibit 15**, Rodriguez Video Depo. Media 3 Time 37:18 (Freedman believed that Zuniga followed Use of Force Policy of the Department).   Plaintiff agreed that his behavior was not appropriate under the circumstances as shown by his apology to the officer on his way to the station.  **Exhibit 2**, Esmeralda Guerra's Inter-Departmental Communication, May 13, 2016; **Exhibit 9**, Soto Depo. p. 115. The Chief remembers that Internal Affairs Lieutenant Foley, who was in charge of the Office of Professional Responsibility, stated in his report that Officer Zuniga took action to end the attack and the Plaintiff was injured as a result of the reaction he brought upon himself after attacking Zuniga.  **Exhibit 15**, Rodriguez Video Depo. Media 3 Time 00:34.13 - 00:34:00. When Plaintiff became cooperative he was allowed to sit up and wait for the mask which was brought by Officer Zuniga's supervisor. Document 1, ¶ III, p. 3, **Exhibit 1**, Officer Zuniga's Inter-Departmental Communication, May 26, 2016.  **Exhibit 13**, Bautista Video Depo. Time 36:00; Time 57.50; **Exhibit 10**, Zuniga Video Depo. Time 42:30; Time 43:12.  Med Care was called to scene but Plaintiff refused treatment so he was transported to jail. **Id.**, **Exhibit 2**, Esmeralda Guerra's Inter-Departmental Communication, May 13, 2016.   **Exhibit 10**, Zuniga Video Depo. Time 41:00; Time 51:00.  Plaintiff's claims of excessive force against Officer Zuniga should, therefore, be dismissed.

**D.**    **Officer Zuniga is entitled to Qualified Immunity**

3.35    "Qualified immunity is an immunity from suit rather than a mere defense to liability."  **_Pearson v. Callahan_**, 555 U.S. 223, 237, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009).  Qualified immunity is an affirmative defense that the defendant official has the

burden of pleading.  *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S. Ct. 1920, 1924, 64 L. Ed.

572 (1980); *Crawford-El v. Britton*, 523 U.S. 574, 587, 118 S. Ct. 1584, 1591, 140 L. Ed.

2d 759 (1998).  Once that defense is raised, the burden is then on the plaintiff to prove that

the government official is not entitled to qualified immunity.  *Wyatt v. Fletcher*, 718 F.3d

496, 510 (5th Cir. 2013).  "When a defendant invokes qualified immunity, the burden is on

the plaintiff to demonstrate the inapplicability of the defense."  *Crostley v. Lamar County*,

717 F.3d 410, 422 (5th Cir. 2013).  A public official may assert qualified immunity at the

initial pleading stage, as well as in a later motion for summary judgment.  *Behrens v.*

*Pelletier*, 516 U.S. 299, 307, 116 S. Ct. 834, 839, 133 L. Ed. 2d 773 (1996); *Pearson, v.*

*Callahan*, 555 U.S. at 232, 129 S. Ct. at 815.

3.36    There is a presumption that an individual defendant is entitled to federal

qualified immunity.  *Foster v. City of Lake Jackson*, 28 F.3d 425, 428 (5th Cir. 1994).

"Qualified immunity is 'an entitlement not to stand trial or face the other burdens of

litigation.'"  *Saucier v. Katz*, 533 U.S. 194, 200, 121 S. Ct. 2151, 2156 (2001), *quoting*

*Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806 (1985).  Qualified immunity

grounded in the acknowledgment that officers must make a split-second decision about the

appropriate use of force in chaotic, highly dangerous situations.  *Graham v. Connor*, 490

U.S.386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).  Qualified immunity allows officers

"breathing room to make reasonable but mistaken judgments about open legal questions."

*Ashcroft v. Al - Kidd*, 563 U.S. 731, 743, 1315, S. Ct. 2074, 179 L. Ed 2d 1149 (2011).

"Reasonableness" cannot be grounded on what, upon reflection "in the peace of the judge's

chambers" seems necessary; rather it is defined by the chaotic circumstances without which the officers are thrust. *Conner*, 490 U.S. at 396-97, 109 S.Ct. 1865.

To establish that an individual defendant is *not* entitled to qualified immunity, a plaintiff must satisfy a three-pronged test. First, he must allege facts that assert a violation of a constitutional right. Second, he must show that this right was clearly established at the time of the defendant's actions, and third he must show that the defendant's actions were objectively unreasonable. *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1305 (5th Cir. 1995), *cert denied*, 517 U.S. 1191, 116 S. Ct. 1680 (1996), *citing Harlow v. Fitzgerald*, 457 U.S. 800, 815-19, 102 S. Ct. 2727, 2736-38, 73 L. Ed. 2d 396 (1981); *Sorenson v. Ferrie*, 134 F.2d 325, 327 (5th Cir. 1998). There is no requirements, however, for lower courts to decide whether or not a ruling on the constitutional question should precede consideration whether the law was clearly established. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

3.37   "To prevail against a qualified-immunity claim, [plaintiff] must show: (1) [his] allegations state a violation of current law; and (2) the [defendant's] conduct was objectively unreasonable in the light of the clearly-established law at the time of such conduct." *Chavez v. De La Paz*, 156 F. App'x 694, 696 (5th Cir. 2005). "Thus, a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. Leblanc*, 691 F.3d 645, 648 (5th Cir. 2012).

3.38    Even if Officer Zuniga's conduct infringed upon a constitutional right, qualified immunity shields government officials from liability unless the official violated a statutory or constitutional right that was *clearly established* at the time of the challenged conduct and of which a reasonable person would have known.   ***City of Escondido v. Emmons***, 139 S. Ct. 500, 503; 202 L. Ed. 2d 455, 459 (2019) (clearly established right must be defined with specificity); ***White v. Pauley***, 580 US 548, 137 S.Ct. 548 (2017) (officer's conduct did not constitute "run-of-the-mill Fourth Amendment violation" and no precedent exists holding that violation of the Fourth Amendment had occurred in similar circumstances); ***Taylor v. Barkes***, 135 S. Ct. 2042, 2044, 192 L. Ed. 2d 78 (2015); ***Reichle v. Howards***, 132 S. Ct. 2088, 2093, 192 L. Ed. 2d 78 (2012).  To be "clearly established" a right must be sufficiently clear that *every* reasonable official would have understood that what he is doing violates that right.  ***Ashcroft v. al-Kidd***, 563 U.S. 731, 741, 131 S. Ct. 2074, 2083, 179 L. Ed. 2d 1149 (2011); ***Anderson v. Creighton***, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 523 (1987).  "If public officials or officers of 'reasonable competence could disagree [on whether an action is legal], immunity should be recognized.'"  ***Thomas v. Murray***, 107 F.Supp.2d 748, 756 (N.D. Tex. 2000)*, quoting Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L.Ed.2d 271 (1986).  Plaintiff must do more than show that Officer Zuniga may have been negligent, or that a reasonably prudent officer could have reached a different decision; they must show that *absolutely no reasonable police officer* would ever engage in and continue with this pursuit in the way and fashion in which Officer Zuniga did.  ***Manis v. Lawson***, 585 F.3d 839, 846 (5th Cir. 2009); See also, ***Wadewitz v. Montgomery***, 951 S.W.2d 464, 467 (Tex. 1997); ***City of***

*Lancaster v. Chambers*, 883 S.W.2d 650, 656 (Tex. 1994). When properly applied, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085. Courts are not permitted "to define clearly established law at a high level of generality" *City & County of San Francisco v. Sheehan*, 575 U.S. 600, 135 S. Ct. 1765, 1775-76, 191 L. Ed. 2d 856 (2015). Certainly it would protect Officer Zuniga since his supervisor, after reviewing his actions, stated that he used the amount of force necessary to restrain Plaintiff. Further, he had reason to believe the Plaintiff posed a threat of harm to himself and others. *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009) (use of force is presumptively reasonable when the office has reason to believe that the suspect poses serious harm to himself and others).

3.39   Plaintiff must therefore come forward with admissible evidence that would establish that the arrest or detention of, or use of force, on him was *objectively unreasonable*. *Thomas v. Murray*, 107 F. Supp. 2d at 755, *citing Evans v. Ball*, 168 F.3d 856, 860 (5th Cir. 1999); See also, *Linicomm v. Hill*, 902 F.3d 529 (5th Cir. Sept. 2018). Officer Zuniga's subjective intent is irrelevant and his knowledge of the law need not rise to the level of a "constitutional scholar." *Sanchez v. Swyden*, 139 F.3d 464, 467 (5th Cir. 1998), *quoting Harlow v. Fitzgerald*, 457 U.S. 800, 815-17, 102 S. Ct. 2727, 2736-38.

> When a public official pleads the affirmative defense of qualified immunity in his answer, the district court may, on the official's motion or on its own, require the plaintiff to reply to that defense in detail. By definition, the reply must be tailored to the assertion of qualified immunity and fairly engage its allegations. A defendant has an incentive to plead his defense with some particularity because it has the practical effect of requiring particularity in the reply.

*Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995).  "[V]indicating the immunity doctrine will ordinarily require such a reply, and a district court's discretion not to do so is narrow indeed when greater detail might assist"  *Id.*, 47 F.3d at 1434.

3.40   To survive a motion to dismiss based on a claim of qualified immunity, the actions of each individual "must be pleaded with 'factual detail and particularity,' not mere conclusionary allegations." *Jackson v. Widnall*, 99 F.3d 710, 715-16 (5th Cir. 1996), *quoting Schultea v. Wood*, 47 F.3d at 1430.  The "heightened pleading" requirement for claims asserted against officials in their individual capacities, first enunciated in *Elliott v. Perez*, requires that once a claim of qualified immunity is raised, "the district court should on its own require of the plaintiff a detailed complaint alleging with particularity all material facts on which he contends he will establish his right to recovery, which will include detailed facts supporting the contention that the plea of immunity cannot be sustained."  751 F.2d 1472, 1482 (5th Cir. 1985).

3.41   Plaintiff has not identified any basis to establish the officer's actions were in violation of current law or that his conduct was objectively unreasonable in the light of the clearly-established law at the time.   Plaintiff has identified no facts to establish that his arrest was unlawful or that any use of force by Officer Zuniga was excessive to the need, and much less any action of Officer Zuniga that violated clearly established constitutional rights of which a reasonable person would have known.  *See Eugene v. Alief Independent School Dist.*, 65 F.3d 1299, 1305 (5th Cir. 1995).  This is especially true since Zuniga and the fellow officer had not been aware of a similar case and Zuniga's supervisor, Captain Freeman, reviewed Officer Zuniga's conduct and stated there was no misconduct by

Officer Zuniga.  **Exhibit 4**, Captain Freeman's Inter-Departmental Communication, May

31, 2016.  See also, **Exhibit 13**, Bautista Video Depo. Time 58:25; Time 26:30-26:50;

Time 1:51:36; **Exhibit 10**, Zuniga Video Depo. Time 51:50-52:56; Time 53:20; Time

1:08:10; **Exhibit 15**, Rodriguez Video Depo. Media 3 Time 00:20.00 – 00:37.20 (regarding

department's review of Plaintiff's conduct).  It is more telling since Defendant's expert, a

longtime Chief of Police and later lawyer found no misconduct or excessive use of force

under the circumstances.  **Exhibits 6 and** 7.  What matters when there are two accounts of

the facts, is whether the "dispute" is "genuine" and not merely contested when one story,

as is Plaintiff's, so contradicted by the record that no reasonable jury could believe it.  ***Scott***

***v. Harris***, 550 U.S. 372, 380 (2007).  Officer Zuniga is therefore entitled to qualified

immunity and dismissal of all claims raised against him.

3.42   With respect to the second prong, a "clearly established right" is one that is

sufficiently clear that every reasonable official would have understood that what he was

doing was violating that right.  ***Mullenix. v. Luna***, 136 U.S. 305, 136 S. Ct 305, 308, 193

L. Ed. 2d 255 (2015). This clearly established element has not been clearly defined,

however, and must be undertaken in light of the specific context of the case, not as a broad

general proposition.  ***Mullinex*** at 308.  Existing evidence must be "beyond debate that the

officer's conduct violated the Fourth Amendment.  Even an officer who acts contrary to

his training may be protected by qualified immunity as long as a reasonable officer could

have believed that the officer's conduct was justified.  ***City of San Francisco, CA v.***

***Sheelan***, 135 S.Ct. 1765 (2015); and, even a single case from the controlling circuit is not

enough to establish "clearly established law."  ***Carroll v. Carmen***, 574 U.S. 13 (2014).  See

also ***Rich v. Palko***, 920 F.3d 288 (5ᵗʰ Cir. Apr. 3, 2019) (none of Plaintiff's cases cited precedent clearly establishing that officers used excessive force).  In this case, as stated, even a supervisor of officer Zuniga felt that there was any violation of a clearly established right of Plaintiff.  **Exhibit 4**, Captain Freeman's Inter-Departmental Communication, May 31, 2016.  Neither Zuniga nor Bautista were aware of a similar case that would have informed Zuniga that what he did under the circumstances was not to be done.  **Exhibit 10**, Zuniga Video Depo. Time 51:50-52:56; Time 53:20; Time 1:08:10.  **Exhibit 13**, Bautista Video Depo. Time 26:30-26:55; Time 38:38-58:58, Time 58:25 (Bautista not trained on what to do under the circumstances).

3.43    In the case of ***Kisela v. Hughes***, 584 U.S. ___, 138 S.Ct. 1148 (2018) (per curiam), the United State Supreme Court reversed the decision of the Ninth Circuit holding that an officer was entitled to qualified immunity when an officer shot a woman after a response to a 911 call reporting her erratic behavior and ignoring officer's orders to drop the knife she held within standing distance of her roommate.  The Supreme Court espoused that reasonableness of the officer's actions must be judged from the perspective of the officer on the scene, rather than 20/20 hindsight.  **Id**., at 138 S.C. at 1152.  137 at 550. Further it stated that case law held that immunity clearly protects all but the plainly incompetent or those who knowingly violate the law; **Id**. at 1152, citing, ***White v. Pauly***, 580 U.S. ___, 137 S.Ct. 548, 551, 196 L.Ed. 463, 486) (2017) (per curiam).   Citing ***Plumhoff v. Rickard***, 572 U.S. 134 S.Ct. 2012, 188 L.Ed.2ⁿᵈ 1056 (2014), it also stated that an officer cannot be held to have violated a clearly established right unless the rights and contours were sufficiently definite that *any* reasonable officer in the department would

have understood that he was violating it.  **Id**. at 1153.  The court then held that the case was *far from an obvious case where any competent officer would have known* that the shooting would violate her Fourth Amendment.  **Id**. at 1153.  The facts and injuries of Plaintiff in this case are not as egregious as the facts in **Kisela**, and yet the officer's actions in **Kisela** supported the officer's immunity.

3.44    Most recently, in the case of ***City of Escondido v. Emmons***, 139 S. Ct. 500, 202 L. Ed. 2d 455 (2019) (per curiam), the United States Supreme Court, specifically addressed the "clearly established prong" of the immunity argument.  The court, citing ***City of Kisela***, stated that an officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in defendant's shoes would have understood that he was violating it.  139 S. Ct. at 503, 202 L. Ed. At 459.  It also stated that it had stressed the *need to identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment*, and though a case does not have to be directly on point, existing precedent must place the lawfulness of the particular [actions] beyond debate.  139 S.Ct. at 504, 202 L. Ed. at 460. It further restated that a body of relevant case law is usually necessary to clearly establish the answer.  139 S. Ct. at 504, 202 L. Ed. at 460.  While the Plaintiff identifies other cases under other facts, the Plaintiff has not identified or presented any existing legal case law similar or on point regarding Zuniga's actions and as such his pleadings and evidence are deficient in this regard.

3.45    To the extent that Plaintiff asserts bystander liability against Officer Zuniga through the actions of Officer Bautista, bystander liability requires that the officer in

38

question be sufficiently close enough to the alleged constitutional violation to have a "reasonable opportunity" to prevent its occurrence.  See *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995).  See also, *Kitchen v. Dallas Cnty., Tex.*, 759 F.3d 468, 480 (5th Cir. 2014).  Moreover, it is important to determine whether the officer "acquiesce[d]" in the constitutional violation. **Id**.; *Whitley v. Hanna*, 726 F.3d 631, 647 (5th Cir. 2013).

3.46    Plaintiff has not sufficiently pled a cognizable claim of bystander liability for excessive force.  He has failed to allege facts that would indicate Zuniga knew a fellow officer was violating Plaintiff's constitutional rights.  Though, he has pled an unorganized array of conclusory allegations against Zuniga who exercised an objectively reasonable use of force against an assaultive arrestee, it is significant that the actions of Zuniga were reviewed by an uninvolved officer who concluded that the amount of force applied in this situation was appropriate and necessary.  **Exhibit 4**, Freeman's Inter-Departmental Communication, May 31, 2016.

3.47    Plaintiff has also pled no facts that would support a finding that Zuniga had a reasonable opportunity to intervene and stop this conduct, or that he acquiesced in Zuniga's actions.  In fact, Officer Zuniga testified that he did not see Officer Bautista kick him.  **Exhibit 10**, Zuniga Video Depo. Time 39:40.  **Exhibit 17**, Zuniga Affidavit.  An officer is only liable if there is a realistic and reasonable opportunity to intervene. See *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir.1986) (instructing the district court upon remand to determine whether the officer was in a position to intervene), see also *Putman v. Gerloff*, 639 F.2d 415, 423-24 (11th Cir. 1981) (liability exists only if the non-intervening officer saw the incident or had time to reach the offending officer).  In this case, even if

Zuniga had seen Bautista kick Plaintiff, there was no need to intervene because there is no evidence that Bautista kicked Plaintiff more than once.

3.48    To the extent that Zuniga is sued in his official capacity, Plaintiff's claim fails because Plaintiff pleads insufficient facts to state a claim of municipal liability against the City. Similarly, claims against Zuniga in his individual capacity fail because he is entitled to qualified immunity on Plaintiff's excessive use of force claim and Plaintiff has failed to plead sufficient facts to state a bystander liability for excessive force claim.  Finally, in the event this Court finds that the Bautista did not employ excessive force, or his conduct with respect to Plaintiff is entitled to qualified immunity for excessive use of force, then Zuniga is entitled to qualified immunity on the issue of bystander liability for excessive force.

3.49    Because Plaintiff has no case law and evidence, or no sufficient evidence, to rebut the presumption of qualified immunity or to establish any of the causes of action he alleges, and because Officer Zuniga was not made aware of existing case law similar to the facts of this case which would have informed him that what he did was wrong, Officer Zuniga is entitled to qualified immunity and, alternatively, summary judgment with respect to the claims made against him.

3.50    Defendant Officer Luis Zuniga would therefore respectfully request that, upon consideration of this Second Judgment on the Pleadings and Motion for Summary Judgment regarding Plaintiff's First Amended Original Complaint, Plaintiff's claims against him be dismissed with prejudice, and that Defendant be granted such other and further relief to which he may show himself to be justly entitled, whether general or special, at law and in equity.

Respectfully submitted,

*/s/ Francisco J. Zabarte*

Francisco J. Zabarte
State Bar No. 22235300
SD No. 10747
Email: frank@aguilarzabartellc.com

AGUILAR✷ZABARTE, LLC
990 Marine Drive
Brownsville, Texas  78520
Telephone    : (956) 504-1100
Facsimile    : (956) 504-1408
**ATTORNEYS FOR DEFENDANT,
OFFICER LUIS ZUNIGA**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing, **DEFENDANT OFFICER LUIS ZUNIGA'S THIRD MOTION FOR JUDGMENT ON THE PLEADINGS AND MOTION FOR SUMMARY JUDGMENT REGARDING PLAINTIFF'S FIRST AMENDED ORIGINAL COMPLAINT** will on the 9th of November, 2020, be automatically accomplished through the Notice of Electronic Filing requested upon the following:

Mr. Gregorio Trevino
**LAW OFFICE OF GREGORIO TREVINO**
300 East Highway 83, Suite "I"
Pharr, Texas  78577
Email: gtrevlaw@sbcglobal.net

Mr. James A. Gleason
**PENA GARCIA, PLLC**
3900 N. 10th Street, Suite 1050
McAllen, Texas  78501
Email: jgleason@penaassociates.com

Mr. Randall L. Kallinen
**KALLINEN LAW PLLC**
511 Broadway Street
Houston, Texas  77012
Email:  attorneykallinen@aol.com

Mr. Isaac J. Tawil
Assistant City Attorney
**City of McAllen**
1300 Houston Avenue
McAllen, Texas  78501
Email: itawil@mcallen.net

*/s/ Francisco J. Zabarte*
Francisco J. Zabarte